Good morning. First case up today is Walker versus Coffey number 19-1067. Good morning. Morning. May it please the court. My name is Jeff Johnson and I represent plaintiff appellant Cal Walker who was present in the court this morning in this case involving claims under the Stored Communications Act. I would like to reserve three minutes and begin with the standing question this court asked us to address. That would be granted and go ahead. Thank you, your honor. Three points on the standing questions. First, Ms. Walker is, she is a private cause of action under section 2707A because she is a person aggrieved by a knowing and intentional violation of the act. How is she aggrieved if we read the previous Walker opinion for the proposition she had no right to privacy of his emails? Yes, your honor. Which is what the opinion says. Thank you. That leads me to the second point which is this court's prior opinion in Walker 1 was expressly limited to my client's now dismissed fourth amendment claim. It expressed no judgment one way or the other on her claim under the Stored Communications Act and it's very important because Congress and we cited in our brief the Google case from 2015 and other courts have recognized this too. Congress passed the Stored Communications Act to provide broader privacy protections than were otherwise provided for emails under the fourth amendment and other federal statutes. So Congress intended it to be broader to impose a fourth amendment overlay and before this court only focused on the constitutional question under the fourth amendment. This involves a separate right under the Stored Communications Act that she has and that is what makes her a person aggrieved. It would be inconsistent with Congress's intent in passing the Stored Communications Act to impose a fourth amendment constitutional overlay onto the separate statutory violation that occurred here. Shouldn't your client be sued in Penn State? Actually, your honor, there's a provision in the statute. She should be suing the defendants for their intentional violation of the act first. There's a provision in the statute that actually talks about don't sue the provider. That's 2703 F. So here she's aggrieved by the defendants conduct and we've decided to proceed against the defendants for their conduct. So you're rightly focusing in statute. If we look at the statute, we look at 2703 A or 2701. In both of those provisions, the focus is on whether the ISP provider is a provider of electronic communication services, right? Yes, your honor. Okay. They don't deal with that other category, RSC, remote computer services providers. Those two sections, 2703 A and 2701 focus on an ECS provider, right? Yes, your honor. All right. So if that's the case, can you help me understand how it is that what we're talking about here constitutes something in electronic storage? Because if I read the statute right, the definition section 251017, which applies here, requires that in order for this to be somehow covered by ECS provisions, it has to be the case that these communications were in electronic storage. Thank you, your honor. The answer to this question is found in the cases that we cite both on the merits and this was a part of the district court's qualifying. You knew the termination and the part of the 25... Under clearly established, right? I'm sorry. Under clearly established? Yes, your honor. Okay. The district court actually didn't talk about the merits question one way or the other on the issue of electronic storage. It just skipped right to, well, it wasn't clearly established. It's our view that both on the merits and the clearly established, it's in our favor and I'll explain why. Yeah, right. Because I understand what the district court did and I understand it skipped over what I'm asking about. But I'm interested to know whether the Storage Communications Act even applies here. So you got to get yourself within the realm of this being an electronic communication, excuse me, an electronic storage of those communications. Yes, your honor. The part of the definition of electronic storage we're focusing on is storage for purposes of backup protection. Okay. So you acknowledge that it's not, and indeed under our Frazier decision, it couldn't be that other category. Incidental. Incidental. It's not that. It's just backup. All right. Is that yes? That's a yes, your honor. It's for purposes of backup protection. Okay. Now what's your authority for that? The authority for that is the Frazier decision. Frazier said it had some doubt about what the district court did, but it assumed without deciding that that was the case, right? Yes. It assumed without deciding, but in our view, and this kind of bleeds over into the Qualified Immunity Determination, it gave fair warning, which district courts, we have a lot of authority for this, but I just want to be clear on the implications of Frazier because it bleeds over into the Qualified Immunity Analysis. The standard is fair warning. The court said, it seems pretty clear, I'm sorry. I'll quote it to you. It says it seems questionable that the transmissions were not in backup storage, but it said it didn't decide that it wasn't. It just had a question about it, and then said assuming without deciding the email in question was in backup storage. That's all it did. It said, well, you know, we got a question about that, but we can assume it without deciding it, and they did. So let's leave Qualified Immunity to the side for a minute because I'm not sure you get a lot of traction there, and just take the question is open because we expressly left it open. How is this backup storage? I would look to the plain language of the statute at the outset, and if you look at the plain language backup storage, there's a copy that remains on the server of Penn State on their computer systems, and that's where the defendants obtained the copy of the email, and this, that's the Theofel case where the court analyzed the plain language of the statute and said that falls right within there because it remains on the server for a copy to be retrieved again in the case that someone wants to find it. Listen, the thing that remains there, though, is the original, is it not? I mean, backup by the very, by the plain language, backup means there is an original, and this is another thing. It's a copy, which we're making to back up what the original is. This isn't a backup, is it? It is the communication. It's the original communication, isn't it? I think there's, there is a... What's the other copy? Where's the, where's the original? To have a backup, you've got to have an original. If this thing which remains on the system, which was the thing that she opened and which they later looked at is not the original, what is the original? There's a version of the email communication that resides on the servers that if you want to obtain it again, for some reason, here it was in response to an invalid subpoena, you can get it. Right. And my question to you is, that version is the original version, is it not? It's the thing that was there to start with. It's just still there. Backup implies I'm not just using the original, I got a backup. I made a copy, and that copy is stored someplace else to back it up and make sure it's safe. How is, under ordinary parlance, how is this thing that's still there a backup, and not just the original still hanging around? Because, I mean, if you follow the logic of the cases, it seems to me that they envision this as starting from point A and ending up at point B. And the idea of post-transmission storage looks at the version that's delivered to the recipient, I guess, as actually kind of being the original, and the version that remains being the version that's in, the copy that's in backup. Was any discovery taken on this issue? Factual? Absolutely no factual discovery in this case whatsoever, your honor. So there's no indication in the record to show there's more than this thing that was what was originally opened? We've pled what we are able to at this point. There's no indication, really, the intricacies of the actual system that Penn State employs. We would love to get discovery in this case. So are these factually driven questions we're asking you? Yes, your honor. Absolutely. And I want to address all of Judge Jordan's questions, but if I may, because I'm running out of time, I would like to pivot to the fact that this case involves many facts that are... Hold on for one second. Judge Jordan, do you have any follow-up? Well, I actually do have a number of questions. I've got a whole bunch of questions. Why don't let me ask you about 2703B, because you've got a claim under that too, right? Yes, your honor. All right. And that one deals with remote computer services, right? Not in this case. If you read 2703A, it says, if you want to require a provider to disclose the contents of communications and electronic storage for 180 days or less, you need a warrant. The last sentence in 2703A says, look to 2703B, which is RCS, for those situations when you want to require a provider, an electronic communication service provider, to disclose the contents of emails in electronic storage for more than 180 days. Yeah, that's not changing the definition of 2703A. You still have to be in... I thought we had agreed on this. 2703A, that's ECS. You're either an ECS or you're not. 2703B applies to RCSs, right? Your honor, it in and of itself applies to RCSs, but the procedures in 2703B, which is RCS, go up to 2703A? I'm not disagreeing with that. Okay. Okay. The question isn't what the procedures are. It's what hat you're wearing. If you're an ECS, you're going to get hit by 2703A. If you're an RCS, you're going to get hit by 2703B. Now, it may be that there are some things that are in 2703B which are applicable in 2703A, but that doesn't change the scope of the coverage of those two sections. The one section is aimed at an ECS provider, the other at an RCS provider, by the terms of the statute, right? That is correct, your honor, except those procedures just do import up. I just want to be clear about that. As I understand it, you've got two claims that are ECS-focused, 2701 and 2703A, and you've got one claim that's RCS-focused, 2703B. Have I got that right? We are not asserting an RCS-focused claim under 2703B. We had to do that. I'm out of time. May I please continue? Thank you, your honor. We had to do that to incorporate the fact that, I mean, an abundance of caution to incorporate the fact that 2703A expressly incorporates the procedures in 2703B. Okay, good. Well, then you've answered my question, which is, I take it, you're not attempting to say that Penn State is an RCS? No, we are not, your honor. Good enough. Thank you. Good enough. Thanks. Okay, we'll give you an extra minute to talk about whatever else you wanted to talk about, or two minutes. We'll put two minutes on, okay? Thank you. Thank you, your honor. Just to judge Estrepo's point from before about the facts in dispute, this is a 12B6 procedural posture, and the facts need to be viewed in the light most favorable to the plaintiff on a 12B6. There's been an alternate narrative that's been introduced into this case that's not in the pleadings, which is that Penn State voluntarily, eagerly obtained my client's emails with an invalid subpoena. And that's really important, because this subpoena was not just a technically deficient subpoena, it was a subpoena that was used in knowing violation of the express limitations on the Attorney General's subpoena power in Pennsylvania, which says you cannot use, if you're the Attorney General, a subpoena for an investigative purpose, only to produce documents for a trial, grand jury, or hearing. So I just want to be very clear on this point, that that narrative is not in the record. So when we say that the law is clearly established, for example, for purposes of 2703, it's clearly established that if you require a service provider to do this stuff that you have traversed the statute if you don't comply with its terms, they respectfully respond with, it was voluntary. But we're the masters of the facts at this point. That's a narrative that, if developed at all, is only appropriate after fact discovery. It hasn't happened yet. Okay, so you are the masters of the fact at this point. Can you point us to anything in the complaint that says this was a, what was contained in the record was a backup, that there was some other copy made, that this wasn't simply the, quote, I'm using scare quotes here, the original, that is the same thing that she opened months and months before, still the original version? I think that... In other words, I'm trying to find out, have you pled that this is, in fact, a backup and therefore electronic storage? You can answer. Thank you, Your Honor. Your Honor, I think the reasonable inference from what we know at this stage is that when they obtained the emails from Penn State servers, they were in backup protection. That's all of the case law from Frazier through the district courts, BFL, Pure Power Boot Camp, Haitley, which recently issued, and if we're talking about this from purpose... Well, when you say all the cases, there's cases from the Sixth Circuit and the Eighth Circuit that say, you know, they cast doubt on that, including a number of district courts that say, we decline to hold that retaining an open email constitutes storing it for backup protection. Ordinary mail or backup is one that serves as a substitute or support. I mean, this is not, it's not like DFL sets the standard and everybody fell behind it. There's plenty of courts that say, no, that's wrong. I think in this circuit, respectfully, that the law after Frazier, Frazier was fair warning, and after that marker, strategic well, integrated waste solutions, all these cases, Judge Brody, Your Honor, was the district court judge in Frazier. And she went the other way. After Frazier and all the other cases that we've referenced, she said, the parties agree that what we say is the state of electronic storage here is the way that it is. And she did, she just said as a matter of law, because it is, I mean, it's in our view, clear. Okay. All right. Thank you, counsel. We'll get you on rebuttal. Thank you, Judge. Thank you. Hopefully you're listening, counsel. There's some new things here. Well, I was trying to follow it, but as you perceived, I'm taking a somewhat different approach or I might, that's my plan. As far as we're concerned, and I should introduce myself for the record. I'm Claudia Tesoro from the attorney general's office on behalf of the appellees. In Walker one, this court explicitly decided that with respect to Ms. Walker's emails, she did not enjoy a reasonable expectation of privacy vis-a-vis her employer. Therefore, her employer, Penn State, could and did independently consent to a search of those emails, and Penn State voluntarily provided them to the defendants. That's the rabbit in the hat, right, Ms. Tesoro, when you say, and they did independently consent, right? You just heard the tail end of your colleague's presentation, and Mr. Johnson said, that's not what we allege. We're 12B6 stage here, and they're not allowed to say, to characterize this, we've alleged that Penn State reacted to an invalid subpoena. Well, I think they have overlooked a few details that are pled, and are reasonable inferences to draw from the complaint, with regard to the fact that there was a contact with Penn State initially, the emails were not provided then, there was a request for a subpoena, they came back with an unenforceable subpoena, I admit. I can't change that, and Walker one recognized that. Don't both those things you've just said, if you take fair inferences in favor of the plaintiff, mean that the defendants should lose, not that they should win on 12B6, because the fair inference is Penn State didn't want to turn this over, and they only turned it over when they got legal process, and that that legal process being flawed was something that was laid at the doorstep of the defendants, not the plaintiffs. I don't, I don't read it that way, and I don't think this court read it that way in Walker one, and I don't think this court now can backtrack from what it understood from the complaint in Walker one, and the complaint now, which is in almost every respect the same. Well, to be clear, didn't we say simply we declined to find that the university's consent was coerced? That's as far as we went, I think, right? Well, I think that's pretty far. Well, I mean, it doesn't say that it was a consent, or authorized, it just wasn't coerced. It said it was consent, it was, they had the authority to consent, they independently did consent, and it wasn't coerced, so if it wasn't coerced, it must have been routine and voluntary. This, this feeds into all the issues that I was intending to discuss this morning, one of which, of course, in light of the court's letter, is standing. Um, Mr. Johnson argues that Walker one is cabined to Fourth Amendment standing, and that she has a separate claim, and it should be analyzed separately under the Stored Communications Act. What do you say to that? Well, she, the Fourth Amendment claim and the Stored Communications Act claim are technically two different things, but if I understood Mr. Johnson's point, he said that the Stored Communications Act was intended to broaden the Fourth Amendment. The way I read the history of the act is, it was intended to give internet service providers and other providers of stored communications and holders of stored communications protection that's analogous to the Fourth Amendment, because they aren't normally dealing with invest, criminal investigations where a question about the consent or non-consent to a their business transactions and customer transactions, where the Fourth Amendment has no role ordinarily. And again, as I understand it, the law was created to, to give some structure and protection to the providers of stored communications so that they could defend themselves if people complained about what they were doing. That's not the kind of situation that we have here, but I think you can't divorce the reality that consent under the Fourth Amendment and authorization, which is a word that runs all through the Stored Communications Act, are synonyms. In fact, because of what the court decided in Walker 1, and because of the principle that if a case is decided and then returns for a second round, the law of the case doctrine applies to any legal issue that was actually decided either expressly or by implication. So our, our overarching concept here is that the consent ruling in Walker 1 necessarily, by implication, tracks the authorization issue to the extent that that controls what's going on now in this second round of the lawsuit. Would we, would we be just incenting bad behavior here by government actors if we said, if we just let this go? I mean, how does, how does one get compliance with the strictures that Congress put in place in the Stored Communications Act? If you can have government actors, and for the purposes of argument, let's leave good faith, bad faith out of this, okay? Let's just, for purposes of argument, let's assume we're not talking about this case. We're talking about a case where you had bad actors on the part of the government. They knew they were producing a bad subpoena, that it was not proper legal process, and they just were trying to fool the ISP provider. If you say in a case like this, well, there was independent consent because there wasn't coercion, and we know that there was bad action here, but they weren't doing it because they were fooled. How do we avoid giving, you know, an incentive for bad behavior by government agents? I think that would really be a diversion from the least, ma'am. The allegation here is that these people were behaving in a way that was bad, that they knew they had a bad subpoena, and they forced Penn State's hand, and that they should pay the consequences of it. So that's exactly what we're dealing with here. Now, I don't want you to have to admit that, so I've said take it out of the realm of this particular one and imagine a world where that is the case. How is it that we avoid incenting bad behavior if we say in a case like this, that's okay, forget about it? Well, I think that the technical answer that occurs to me is that that's why qualified immunity was invented, to clarify the law so that future actors know what the law is and they don't have the uncertainty that exists in our view over some aspects of this case. Are you suggesting they're entitled to qualified immunity for writing a bogus subpoena? No, no, no, but they haven't been sued for writing a bogus subpoena. They've been sued under the Stored Communications Act. For using a bogus subpoena. But there are, first of all, there's the standing question, which I haven't quite gotten to speak about, but I want to touch quickly on the fact that there isn't an injury to her. She has to allege a concrete and particularized injury to a legally protected interest traceable to these defendants, and I submit that she did not do that. But moving on, on the merits of the case, the access to the facility without authorization and the claim that there were compelled disclosures here must all be viewed in terms of the scenario that the complaint sets forth. Well, you do assume then, like your colleague, that the Stored Communication Act applies. That's the argument base that you've got there, and the questions that I was asking Mr. Johnson are, does the Stored Communications Act even apply if these are not backup storage? I think that that's very much in doubt, and that is the core of the District Court's conclusion on qualified immunity. For that very reason, if these were not that type of communications in that type of storage, then there was no violation for that reason as opposed, not as opposed to, but in addition to the other reasons that we've tried to set forth in our briefs. Can we make the determination if the Stored Communication Act applies on the factual record or lack thereof in front of us? I don't think that the question needs a factual record because either way, the state of the law on what is or isn't in backup protection at the time of these events was not clear. How do you respond to your adversary? He spoke about, hey, we made our allegations and the government added on with things that just aren't part of the record. You heard what he said. Do you have any response to that? In other words, perhaps things like, well, there was an agreement here and other things. I mean, their allegations are pretty clear. I think the assertion... I think he said narrative. The government's come up with a different narrative that is sort of extra pleadings. I don't think that's a justifiable accusation. I think that the pleading that we have has in it things, for example, about the interaction between the general counsel's investigator and the directive to that person to please cooperate and to provide the information that was requested. So I think that if anybody is trying to embellish the allegations, it's not us. On the merits, the same ruling about Penn State having the authority to consent and having actually consented leads to the result that neither 2701 nor 2703 was violated here. I want to remind the court of the obvious, which is 2701 is actually framed as a criminal prohibition, although it's used in the civil litigation context too, of course. It is framed that way. So how do you get any mileage out of that when the statute, by its terms, says that there's a civil action for any violation of the terms of the statute and lays out the penalties for it? Right. And I accept that there can be a civil action based on that, but I'm talking about the scenario that is contemplated under 2701, which talks about anyone who accesses a facility without authorization is potentially liable for a violation, criminally or civilly. And the authorization part of that scenario is important. There's also in the later subsection an exception for the provider of the electronic communications can do what it wants. In a sense, that's what the gist of this court's decision in Fraser was all about. So what the complaint here seems to do is to try and construct a stored communications act claim based on the acts of the two defendants, even though the stored communications act obligations were not at issue as far as Penn State. It's not a fanciful claim, right? If it were, we wouldn't be sitting here. The claim is pretty straightforward. Your clients cooked up a bogus subpoena and extracted information that they weren't entitled to get. And that the only reason they got it was because they used a bogus subpoena and that that's not authorization. That's an abuse of the system and that's covered by the act. That's the, you know, not to put too fine a point on it, that's the character of the allegation that's the level that your clients. So I'm not sure where you're going by saying the SCA doesn't seem to be getting at this when it talks about without authorization, when that act itself is all about the kinds of things the government has to do to properly get authorization. And the nature of their claim is you did none of those things, and in fact did something contrary to them. But that brings us back to the standing inquiry and the injury to her interest that is or isn't pled in this case. Because if there's no standing, there's no case, no matter what the underlying merits would turn out to be. And the nature of that argument is she has no injury because she had no expectation of privacy? Correct. That is the key to it. She had no expectation of privacy in those emails, and therefore what was done did not interfere with a legally protected right that she had. So are you saying there's no way to tease the Fourth Amendment and the SCA claims apart? I think that's correct under this situation and the events that she raised and that she pleads. She had no expectation of privacy, therefore what happened did not violate a legally cognizable right, even if it happened the way she says, which I'm not prepared to agree with, but let's say that it did because we have to take her complaint at face value. But it did not interfere with a legally protected right, and nothing that I've seen since Walker 1 has changed my mind about that in terms of stored communications, Fourth Amendment, or anything else. Just on a very tiny note, I wanted to bring one more case to the Court's attention. This is about qualified immunity and the availability of qualified immunity for a statutory claim. The Fourth Amendment decided a case just recently called... Fourth Circuit. Yes, Fourth Circuit, definitely. Atkinson, Atkison, and it is located at 925 F3rd 606. Oh my goodness, I misplaced the site, but it's right in front of me. 925 F3rd 606 came down in June, and it was Electronic Communications Privacy Act, not Stored Communications Act, but those are two different titles within the same law, so I think it might be helpful to the Court to be reassured about the availability of qualified immunity. Thank you, Counsel. Thank you. Well, again, a few brief points in response to what just came up. This Court decided the qualified immunity case recently, too, and it's called Sharkey, and it was Judge Restrepo's case, and in that case... That was brilliant. And in that case, Judge Restrepo said, on behalf of the unanimous panel, that the defendants bear the burden of showing qualified immunity, and I want to be really clear about that. In a lot of these cases, it seems, and I'm not intuiting this to this panel, but it seems that there's the expectation that plaintiffs have to disprove that qualified immunity applies. It's actually their burden. But isn't it also the case that the standard set by the Supreme Court is that it has to be shown that no reasonable officer could possibly have been confused. No reasonable officer could have been left in doubt. It is to show that people will be on the hook for personal liability, it's not enough to show, well, there's a question out there. You've got to show that, on the contrary, that there was no question, no thoughtful person could have thought that what the officer or agent did was lawful. The, Your Honor, I believe the standard in this circuit, as applied in the context of what you're talking about, is fair warning. I think Frazier, on all the cases on electronic, there's a lot of other points I'd like to speak about, and so, but electronic storage, I think Frazier gave fair warning, and I respectfully submit that everything that followed that in this circuit establishes that. How can Frazier give fair warning when Frazier, by its terms, says, well, we've got a doubt about that, but we're just going to assume it without deciding it? It not only didn't decide it, it expressly didn't decide it. After Frazier, every district court in this circuit, and then we look to the other circuits that have aligned with those district courts in Frazier, have unanimously held that... Well, it's true that everybody agreed would constitute unanimity, but not everybody agreed, so it's not unanimous. As Your Honor recognized in the Sowers decision, controlling precedent in the jurisdiction that we're in, and that's the Third Circuit, and I know what your response will be, but they left the question open. But I think that the tie happened, things came together afterwards, and viewed in the specific context of this case, when you look at all the authorities, I would submit that the state of the law in electronic storage was clear. I would also note that in their briefs, they never really challenged the merits of the electronic storage point. It was only saying, hey, it's not clearly established. With respect to... Can I get back to standing? Yes, Your Honor. Can you again distinguish for me the difference in standing, as it were, between the Fourth Amendment, what you're saying is different than the standing under the Stored Communications Act? Yes, Your Honor. So is the Stored Communications Act more expansive than the Fourth Amendment, or is it a subset of the Fourth Amendment? It's a gap-filling statute. In Hagley v. Walsh, the Fourth Circuit just issued a few months ago, they said the Stored Communications Act is a gap-filling statute that was meant to protect... It wasn't meant to expand the Fourth Amendment, like my colleagues said. It was meant to provide broader privacy protections under federal law for email communications. And this Court, since Spokio... And I really want to answer Your Honor's question. I'm out of time. May I, please? Yeah, you may answer the question. Thank you. Has said there's... So I don't think there's any question this is a particularized injury. Her emails, her rights under the Act. I think Your Honor's question is concrete injury. The Google decision, Hagley, they recognized this is a different statute. Why would Congress have put 2703 in? Which is a provision that expressly regulates government conduct into the statute if it was coextensive with the Fourth Amendment. It's not. Well, why would Congress have taken care in the Stored Communication Act to make it clear that these were directed when it comes to remote computing services, for example, to public ISPs? This is not a public ISP. This is her workplace private internet service provider. So how do you tease out, and I don't mean to jump on Judge Restrepo's question, but how do you tease out from the Fourth Amendment question of expectation of privacy standing to say, I've got an injury under the Stored Communication Act. If the Stored Communication Act... If it's open to question whether you even have a right to privacy in those emails. I mean, Penn State can do whatever it wants. She was not entitled to do whatever she wanted with the email. I'm sure she was under obligations to her employer, and they could do what they wanted with it, right? So I think we can answer both these questions at the same time, hopefully. In Frazier, that was a private employer, and the court didn't question whether or not the whole situation in that case involved a provider that properly felt within the Act. The Act uses the words to the public sometimes to describe providers, and sometimes it just says electronic communication service provider. We would submit that that distinction matters. When it says to the public, it's to your Honor's point. When it's broader, which is this case, it captures private employers like Penn State that manage an email system. To Judge Restrepo's question, this court has recognized that there is looking to common law privacy torts as well as looking to Congress's intent in passing statutes after Spokio. Two tests in ascertaining whether or not the violation of a statutory right, the reasonable expectation of privacy, that's a legal concept that occurs when you think about catch the United States in law school and everything that follows it. That's not this case. This case involves the assertion of a statutory right that was passed by Congress specifically to protect privacy in communications. And here, the defendant's conduct resulted in the unlawful disclosure to third parties of my client's private email communications. That's the Nickelodeon case. That's Judge Ambrose's recent decision in the Google case where he said, Frank V. Gayos came out and said, to think that private individuals are without a right of action based off the surreptitious, I'm paraphrasing here, obtaining of someone's private communications and stuff on the internet is untenable. Spokio never intended any such result. Sorry, Congress passed this statute for an express purpose and I would submit that it is distinct from the Fourth Amendment and we do have standing in this case. Thank you, counsel. Thank you. We'll take the case under advisement. We want to thank counsel for excellent briefing and oral arguments. Very interesting case. If counsel is amenable, we'd like to greet you at sidebar in a more personal way to thank you and we'll go off the record for a minute. Thank you.